IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., ) | |
| FLFMC, LLC, ) | |
|      Plaintiffs, ) | |
| ) | |
|      vs ) | Civil Action No. 10-231 |
| ) | |
| EBSCO INDUSTRIES, INC. and ) | |
| PLASTICS RESEARCH AND ) | |
| DEVELOPMENT CORP., ) | |
|      Defendants. ) | |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendants' motion to dismiss the amended complaint (Document No. 46) be denied. It is further recommended that the defendants' motion to transfer this case to the United States District Court for the Western District of Arkansas, Fort Smith Division (Document No. 46) be granted.

II. Report:

Presently before the Court is the defendants' motion to dismiss the amended complaint for failure to state a cognizable claim and/or lack of personal jurisdiction, as well as their alternate motion to transfer this case to the United States District Court for the Western District of Arkansas. For reasons discussed below, the defendants' motion to dismiss the amended complaint should be denied, but their alternate motion to transfer venue should be granted.

The plaintiff-relator, FLFMC, Inc. ("FLFMC"), commenced this *qui tam* action on behalf of the United States of America and in its own name and has filed an amended complaint for

false patent marking pursuant to 35 U.S.C. § 292.[1]  In pertinent part, 35 U.S.C. § 292 provides:

> (a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, ... the name or any imitation of the name of the patentee, the patent number, or the words "patent" "patentee", or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public ... or Whoever marks upon, or affixes to ... any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public ... – Shall be fined not more than $500 for every such offense.
>
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

In the amended complaint, FLFMC contends that defendants EBSCO Industries, Inc. ("EBSCO") and Plastics Research and Development Corporation ("PRADCO") engaged in false patent marking in connection with their manufacture, sale, and/or advertising of an artificial bait product referred to as the Jitterbug.  Specifically, FLFMC alleges that the Jitterbug is marked with United States Patent Nos. 2,207,425 ("the '425 patent") and 2,429,339 ("the '339 patent"), although both patents have expired[2]; that the Jitterbug is alternately marked with United States Patent Nos. 2,261,667 ("the '667 patent") and 2,261,867 ("the '867 patent"), although both patents have expired[3]; that the defendants and/or their predecessors (including their patent

---

[1] The false patent marking statute at issue, 35 U.S.C. § 292, is a *qui tam* statute.  Vermont Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 768 n.1 (2000).  "*Qui tam*" comes from the Latin phrase "who pursues this action on ... the King's behalf as well as his own."  Id.  A *qui tam* statute authorizes a private person, known as a "relator", to commence suit on behalf of the government and to share in any financial recovery.  Id. at 769-70.

[2] According to the amended complaint, the '425 patent was filed on December 17, 1938, was issued on July 9, 1940 and expired on December 17, 1958.  The '339 patent is said to have been filed on November 7, 1945, was issued on October 21, 1947 and expired on November 7, 1965.

[3] FLFMC asserts that the '667 patent was filed on December 28, 1939, was issued on November 4, 1941 and expired on December 28, 1959.  It also avers that the '867 patent was filed on September 24, 1940, was issued on November 4, 1941 and expired on September 24, 1960.

counsel) received notice of the expiration of the aforesaid patents; and that after the patents expired, the defendants or their agents established new manufacturing facilities and utilized new molds that continued to imprint the expired patents on the Jitterbug, and they engaged in false marking with intent to deceive the public.  FLFMC has invoked the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) & (b).

In response to the amended complaint, the defendants filed a joint motion to dismiss it on several grounds or, alternatively, to transfer venue.  In support of their motion to dismiss, the defendants argue that the amended complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), as it does not meet the heightened pleading requirements for a case alleging fraud.  The defendants also assert that the amended complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2), as the Court lacks personal jurisdiction over them.  Alternatively, the defendants move to transfer this case to the United States District Court for the Western District of Arkansas.

<u>Motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)</u>:

We first address the defendants' motion to dismiss pursuant to Rule 12(b)(6).  We agree with the defendants, as well as the majority of courts addressing the issue, that the heightened pleading standard of Fed.R.Civ.P. 9(b) applies to a false marking claim.  Under Rule 9(b)'s heightened pleading standard, the amended complaint must set forth facts with sufficient specificity to show that the defendants falsely marked their product with intent to deceive the public.[4]

The two elements of a false marking claim are: (1) marking an unpatented article, (2) with an intent to deceive the public. <u>Forrest Group, Inc. v. Bon Tool Co.</u>, 590 F.3d 1295, 1300

---

[4] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).

3

(Fed. Cir,. 2009). As to the first of these elements, an article marked with an expired patent number is "unpatented" and falsely marked. Pequignot v. Solo Cup Co., 608 F.3d 1356, 1361-62 (Fed Cir. 2010). FLFMC has properly pled this element in its amended complaint at paragraphs 16-23 and 25.

With respect to the "intent to deceive" element in a false marking claim, the Federal Circuit Court of Appeals has not expressly decided whether a claimant must satisfy the heightened pleading requirements imposed by Rule 9(b). However, in Stauffer v Brooks Brothers, Inc., 619 F.3d 1321(Fed. Cir. 2010), the Court remanded the case to the district court with these instructions:

> We remand for the court to address the merits of the case, including Brooks Brothers' motion to dismiss pursuant to Rule 12(b)(6) 'on the grounds that the complaint fails to state a plausible claim to relief because it fails to allege an 'intent to deceive' the public – a critical element of a section 292 claim – with sufficient specificity to meet the heightened pleading requirements for claims of fraud imposed by' Rule 9(b).

Id. at 1328 (quoting Stauffer v. Brooks Bros. Inc., 615 F.Supp.2d 248, 251 n.1 (S.D.N.Y. 2009)). Furthermore, in Pequignot, supra, the Court stated that "[b]ecause the statute requires that the false marker act 'for the purpose of deceiving the public', a purpose of deceit, rather than simply knowledge that a statement is false, is required." 608 F.3d at 1363. Notably, in patent cases involving inequitable conduct, the Court has held that allegations of "deceptive intent" must be pled pursuant to Rule 9(b). See, Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).

District Courts in this circuit have held that the heightened pleading standard of Rule 9(b) applies to a § 292 false marking claim, as it is a fraud-based claim. United States ex rel. FLFMC, LLC v. William Bounds, LTD., 2010 WL 4788554, *5 (W.D.Pa., Nov. 17, 2010);

4

Brinkmeier v. BIC Corp., 2010 WL 3360568, *8 (D.Del., Aug. 25, 2010); Hollander v. Etymotic Research, Inc., 2010 WL 2813015, *7 (E.D.Pa., July 14, 2010); also see, Hollander v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., 2010 WL 4159265, *5 (E.D.Pa., Oct. 21, 2010) ("Even under a relaxed 9(b) standard, a plaintiff must allege sufficient underlying facts from which a court may reasonably infer that the defendant intended to deceive the public").

Similarly, the majority view in other circuits is that false marking claims are fraud-based claims subject to Rule 9(b)'s heightened pleading standards. Josephs v. Federal-Mogul Corp., 2010 WL 3803779, *2 (E.D.Mich., Sept. 30, 2010) ("plaintiff bringing a claim under § 292 must show that the defendant had a specific intent to deceive the public"); The N.C. Farmers' Assistance Fund v. Monsanto, 2010 WL 3817349, *9 (M.D.N.C., Sept. 27, 2010) ("section 292 is subject to the heightened particularity requirements of Rule 9(b)"); accord, Advanced Cartridge Tech., LLC v. Lexmark Int'l., Inc., 2010 WL 2640137, *1 (M.D.Fla., June 30, 2010); Simonian v. Cisco Sys., Inc., 2010 WL 2523211, *3 (N.D.Ill., June 17, 2010); Juniper Networks v. Shipley, 2009 WL 1381873, *4 (N.D.Cal., May 14, 2009).

We concur with the holding in the above-cited cases that the false marking statute is subject to Rule 9(b)'s pleading requirements. Under Rule 9(b), "knowledge" and "intent" may be alleged generally, but the pleadings must set forth sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind. Exergen, supra, 575 F.3d at 1327; Hollander, supra, 2010 WL 4159265, at *5.

Here, FLFMC's amended complaint sets forth facts showing that the defendants intended to deceive the public. Indeed, as to that element of its claim, FLFMC alleges that the defendants have many decades of experience applying for, maintaining and litigating patents, having manufactured many products and marked, or not marked them with words or numbers indicating

5

that their products are protected by patents or pending applications; that the ribbon copy of a patent reflects the date a patent will expire, and the defendants would have received the original ribbon copy of issued patents or copies of them displaying the patent's expiration date; that EBSCO has used the law firm of Smith, Gambrell & Russell LLP ("SGR") for many of its intellectual property needs, including patent litigation and prosecution; that in January 2010, while SGR was handling various patent matters for EBSCO, SGR issued a client alert -- which was received by the defendants -- advising clients of the risk of continuing to sell products marked with expired patents; and that the defendants or their predecessors (including their patent counsel) had notice that the patents at issue had expired, yet the defendants continued to imprint the expired patents on their Jitterbug product with intent to deceive the public, so as to extend the term of their patents and inhibit competition (Amended Complaint at ¶¶ 7, 10, 14-15, 24, 29-38).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950.

Here, FLFMC's amended complaint sets forth facts with sufficient specificity to show that the defendants falsely marked their product with intent to deceive the public. As discussed above, having alleged that the defendants knew that the patents at issue expired, yet continued to mark the Jitterbug product with the expired patents to deceive the public, FLFMC has satisfied Rule 9(b)'s pleading standards. Thus, the defendants' motion to dismiss pursuant to Rule 12(b)(6) should be denied.

Motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2):

  The defendants also move to dismiss the amended complaint on grounds that the Court lacks personal jurisdiction over them. We disagree.

  As to EBSCO, it is a Delaware Corporation having a principal place of business in Birmingham, Alabama. (Defendants' memorandum in support of their motion to dismiss [Document No. 47] at p. 1). EBSCO is a conglomerate of more than 20 different business endeavors, and it provides administrative services -- such as finance, accounting, marketing, and corporate oversight -- for each of its subsidiaries. (Declaration of David Walker [Document No. 10-1] at ¶ 3). Each EBSCO subsidiary operates autonomously and is managed under the authority of a vice president and general manager. (Id.) EBSCO has no offices or operations within Pennsylvania, but it and some of its subsidiaries have filed administrative documents with governmental offices in Pennsylvania. (Id. at ¶ 5).

  As to PRADCO, it is a subsidiary of EBSCO, having its own autonomous management and its own Federal Employer Identification Number. (Id. at ¶ 4). It does business as PRADCO Outdoor Brands with its headquarters in Decatur, Alabama, while manufacturing facilities for its PRADCO fishing division are located in Ft. Smith, Arkansas. (Declaration of John Woller, Jr. [Document No. 10-2] at ¶¶ 1-2). Like EBSCO, PRADCO Outdoor Brands has no offices or operations within Pennsylvania. (Id. at ¶ 5). Based on these facts, the defendants argue that this Court lacks personal jurisdiction over them.

  Once a jurisdictional defense has been raised, as here, the complainant bears the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the Court in personam jurisdiction. See, Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996), cert. denied, 519 U.S. 1028 (1996). The complainant must present jurisdictional facts

by affidavit or otherwise to establish the Court's jurisdiction over the defendants. Id.

Rule 4 of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a non-resident to the extent allowed under the law of the state where the district court sits.  See, Vetrotex Certainteed v. Consolidated Fiber Glass, 75 F.3d 147, 150 (3d Cir. 1996).  The Pennsylvania Long Arm Statute, 42 Pa.C.S.A. § 5322(b), allows a court to exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  Thus, the reach of Pennsylvania's statute is coextensive with the due process clause of the United States Constitution.  Id.

Under the due process clause, a court may not exercise personal jurisdiction over a non-resident defendant unless certain minimum contacts exist between the defendant and the forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).  In reviewing the conduct of a non-resident defendant and its connection to the forum, a court must ascertain whether "the quality and nature of the defendant's activity is such that it is reasonable and fair to require that it conduct its defense in that state."  Kulko v. Superior Court of California, 436 U.S. 84, 92 (1978) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)).

In Pennsylvania, personal jurisdiction over non-resident defendants may be based upon either: (1) specific forum-related acts of the defendant which give rise to the cause of action (i.e., specific jurisdiction); or (2) the defendant's general activity within the forum state which is "continuous and substantial" (i.e., general jurisdiction).  See, Mellon Bank (East) v. Diveronica Bros., 983 F.2d 551, 554 (3d Cir. 1993).

To establish specific jurisdiction, a plaintiff must show that a non-resident defendant has sufficient minimum contacts with the forum state such that the defendant should reasonably

8

anticipate being haled into court there.  World-Wide Volkswagen, 444 U.S. at 297.  To exercise general jurisdiction over a non-resident defendant, it must be shown that the defendant has engaged in systematic and continuous activities in the forum state.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

      FLFMC asserts that the Court may exercise general jurisdiction over EBSCO, as it took affirmative acts to register as a foreign corporation with Pennsylvania's Department of State, so as to purposely avail itself of the Commonwealth's benefits.  In this Circuit, a foreign corporation's application for and receipt of authorization to do business in Pennsylvania is sufficient contact to serve as the basis for the assertion of personal jurisdiction over it.  Bane v. Netlink, Inc., 925 F.2d 637, 640-41 (3d Cir. 1991), relying on 42 Pa.C.S. § 5301[5]; accord, Am. Environmental Services, Inc. v. Metalworking Lubricants Co., 634 F.Supp.2d 568, 571 (W.D.Pa. 2009).  Also see, Eagle Traffic Control v. James Julian, Inc., 933 F.Supp. 1251, 1256 (E.D.Pa. 1996) ("a foreign corporation is subject to suit in Pennsylvania, even if its only contact with the state is its authorization to do business in Pennsylvania"), citing Bane, supra, 925 F.2d 637.

      Here, EBSCO is currently registered to do business in Pennsylvania as a foreign corporation.[6]  As a foreign corporation registered to do business in Pennsylvania, the Court may exercise personal jurisdiction over EBSCO.

---

[5] In relevant part, 42 Pa.C.S. § 5301(a)(2)(i) provides:
    (a) General rule - The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person ... :
    .....
    (2) Corporations. -- (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

[6] See, Exhibit B attached to the plaintiffs' brief opposing the current motion.

As to PRADCO, the record does not reflect that it is a foreign corporation registered to do business in Pennsylvania. Still, FLFMC asserts that PRADCO has sufficient contacts with Pennsylvania for the Court to assert personal jurisdiction over it.

Assessing a nonresident defendant's minimum contacts is "fact-sensitive in that it turns on the quality and nature of a defendant's activity in relation to the forum state." Pennzoil Products Co. v. Colelli & Assoc., 149 F.3d 197, 203 (3d Cir. 1998). "[I]f a nonresident defendant's contact with the forum is simply 'fortuitous' or 'the result of a single transaction', the minimum contacts requirement has not been satisfied." Id. However, specific jurisdiction may lie over a nonresident defendant if it injected its goods into the forum state and derived, or reasonably expected to derive a substantial benefit from it. Id. That is the case with PRADCO.

PRADCO admits that within the past five years, it sold products with knowledge that the products would be sold in Pennsylvania. (Answer to Interrogatory No. 11 at Exhibit C to the plaintiff's brief opposing the current motion). PRADCO also admits selling the Jitterbug product within Pennsylvania. (Id. at No. 5). Indeed, PRADCO sells its products in at least 32 retail locations within Pennsylvania.[7] Over the past five years, PRADCO's average gross annual sales to Pennsylvania customers exceeded $1.5 million per year. (Answer to Interrogatory No. 3 at Exhibit C to the plaintiff's brief opposing the current motion).

A Court may exercise personal jurisdiction over a nonresident with no physical connection to the forum, when that party "has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident." Mellon Bank (East) PSFS, Nat. Ass'n. v. Farino, 960 F.2d 1217, 1225-26 (3d Cir. 1992), citing Burger King Corp. v.

---

[7] See, Exhibit D attached to the plaintiffs' brief opposing the current motion.

10

Rudzewicz, 471 U.S. 462, 476 (1985).  Certainly, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities".  Farino, supra, 960 F.2d at 1222, quoting Burger King, 471 U.S. at 473.  Based on PRADCO's aforesaid business activities in Pennsylvania, we find it has sufficient contacts with this forum to justify the Court exercising personal jurisdiction over it.

However, that does not end our inquiry, for a Court "must still determine whether the strictures of constitutional due process (i.e., minimum contacts and notions of fair play and substantial justice) would be observed by asserting jurisdiction."  Pennzoil Products, supra, 149 F.3d at 202.  Where, as here, personal jurisdiction may be asserted over a nonresident based on its minimum contacts with the forum, "the burden falls upon the defendant to show that the assertion of jurisdiction is unconstitutional."  Farino, supra, 960 F.2d at 1226 (emphasis in original).  "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."  Grand Entertainment Group v. Star Media Sales, 988 F.2d 476, 483 (3d Cir. 1993).  That is, "a defendant must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004), quoting Burger King, 471 U.S. at 477.[8]

Here, the defendants have not met their heavy burden of showing that this Court's exercise of personal jurisdiction over them would be unreasonable, i.e., not comport with "traditional notions of fair play and substantial justice".  Accordingly, the defendants' motion to

---

[8] In Burger King, the Supreme Court instructed that in determining if personal jurisdiction over a nonresident comports with notions of "fair play and substantial justice", Courts may consider such factors as: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  471 U.S. at 477.

11

dismiss for lack of personal jurisdiction should be denied.

Motion to transfer venue:

In the alternative, the defendants move to transfer this matter to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a). It is provided in 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A Court has broad discretion in determining whether to transfer a case pursuant to 28 U.S.C. § 1404(a). Saint-Gobain Calmar, Inc. v. National Products Corp., 230 F.Supp.2d 655, 658 (E.D.Pa. 2002), citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973). "To justify a transfer under [§ 1404(a)], the moving party must show that venue is proper in the transferee district, and that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." Matt v. Baxter Healthcare, 74 F.Supp.2d 467, 468 (E.D.Pa. 1999). Clearly, this action "might have been brought" in the Western District of Arkansas, as a substantial part of the events giving rise to this case occurred there. See, 28 U.S.C. § 1391. That is, manufacturing facilities for PRADCO's Fishing Division are located in Ft. Smith, Arkansas, and persons responsible for marketing and manufacturing decisions related to the Jitterbug lure are located there (Declaration of James Sheffield at ¶¶ 2,6).

Still, it is the movants' burden to show that the balancing of interests weigh in favor of transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995), citing Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). Unless the balance is strongly in favor of transfer, the plaintiff's choice of forum will stand. Shutte, supra, 431 F.2d at 25. In determining whether to transfer an action, several private and public factors should be weighed, including: (1) the plaintiffs' choice of forum; (2) the defendants' choice of forum; (3)

where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the extent to which witnesses may be unavailable for trial in one fora; (6) the extent to which books and records cannot be produced in one fora; (7) practical considerations which will make trial of a case easy, expeditious and inexpensive; and (8) the local interest in deciding the controversy. Jumara, supra, 55 F.3d at 879-880.

      FLFMC has chosen to litigate its claims in the Western District of Pennsylvania, where it currently resides. Generally, when assessing a transfer motion, "a plaintiff's choice of forum is a paramount consideration which should not be lightly disturbed". Weinstein v. Friedman, 859 F.Supp. 786, 788 (E.D.Pa. 1994). However, in the context of a *qui tam* action, as here, a relator/plaintiff's choice of forum merits less deference and is not entitled to the considerable weight it typically receives. U.S., ex rel. FLFMC, Inc. v. Ohio Art Co., 2010 WL 3155169, *2 (W.D.Pa., July 30, 2010). That is because "in a *qui tam* action the real party in interest is the United States and, accordingly, the relator's choice of venue is not entitled to the same level of deference." Id. (citing cases). Also see, San Francisco Technology, Inc. v. Glad Products Co., 2010 WL 2836775, at *7-*8 (N.D.Cal., July 19, 2010); Harrington v. Ciba Vision Corp., 2008 WL 2893098, at *1 (W.D.N.C., July 23, 2008); U.S., ex rel. Penizotto v. Bates East Corp., 1996 WL 417172, at *2 (E.D.Pa., July 18, 1996) ("because the United States is the real plaintiff in *qui tam* actions, the relator's choice of forum is entitled to relatively little weight.").

      Other factors mentioned by our Court of Appeals in Jumara, such as the defendants' forum preference, the place where the claim arose, and the local interest in deciding the controversy favor a transfer. Clearly, the Western District of Arkansas is the forum preference of the defendants, and that is where most of their alleged false patent marking occurred. Although the defendants advertised and sold the Jitterbug in both forums, the product is

13

marketed and distributed from Fort Smith, Arkansas, and that is where PRADCO manufactured the product from 1997 until 2004, after which it has been manufactured in China (Supplemental Declaration of John Woller, Jr. at Document No. 35-3).

It also appears that the Western District of Arkansas has a greater interest in this dispute. While FLFMC resides in this district, the record shows it was organized on or about January 29, 2010 by Joshua M. Farber, an attorney then at the law firm of Meyer, Unkovic & Scott, LLP, which represents FLFMC in this case (Document No. 10-3). As the defendants point out, FLFMC has initiated at least seven other *qui tam* false marking actions in this Court since it was organized, and that appears to be its sole business.[9] Certainly, "the location or convenience of litigation counsel does not merit consideration in a discretionary transfer evaluation." Ohio Art Co., supra 2010 WL 3155160, at *2, citing Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973). In contrast, PRADCO has manufacturing facilities for its Fishing Division and employees located in Fort Smith, Arkansas (Declaration of James Sheffield at Document No. 10-5), and that is where the Jitterbug fishing lure is marketed and distributed (Supplemental Declaration of John Woller, Jr. at Document No. 35-3). Based on these facts, the Western District of Arkansas has a greater interest in deciding this case.[10]

With respect to other pertinent factors, we are not aware of any witnesses who may be unavailable for trial in one of the fora. However, it appears that most potential witnesses, including persons responsible for marketing and manufacturing decisions related to the Jitterbug lure, such as Bruce Stanton, General Manager of PRADCO fishing, as well as PRADCO's custodian of records pertaining to the manufacture and sale of Jitterbug lures, James Sheffield,

---

[9] See, defendants' brief in support of their current motion at p. 5 (listing the cases).

[10] While the United States has an interest in having its patent laws enforced, that interest is served regardless of where this action is litigated. See, U.S. ex rel. Penizotto, supra, 1996 WL 417172, at *2.

14

are located in Fort Smith, Arkansas (Declaration of James Sheffield at ¶¶ 4, 6). For them, the Western District of Arkansas is clearly a more convenient forum.[11]

Concerning the location of books and records, the vast majority (if not all) documents pertaining to the manufacture and marketing of the Jitterbug lure since 1997 are located in Fort Smith, Arkansas (Supplemental Declaration of John Woller, Jr.). In Jumara, however, the Court stated that the location of books and records is relevant only to the extent they could not be produced in the alternative forum. 55 F.3d at 879. Since all relevant records in this case could presumably be produced in either of the proposed fora, this factor is not determinative.[12]

The United States Supreme Court has stated: "the purpose of [section 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). As the defendants explain, Fort Smith, Arkansas is over 1,000 miles away from Pittsburgh, and travel-related lost work time and expenses, as well as business disruptions due to the absence of management personnel would be significantly reduced if this case was transferred, whereas the "business" of FLFMC would not be disturbed by a transfer, since it is solely in the business of litigation.

Having weighed the relevant factors, and in the interest of convenience to most potential witnesses -- who are said to be located in Fort Smith, Arkansas -- this action should be transferred to the Western District of Arkansas. As discussed above, that is also the forum preference of the defendants, it is the fora with the greatest interest in this dispute, and it is where most of the defendants' alleged illicit conduct occurred. Although FLFMC chose to litigate its

---

[11] At this juncture, FLFMC has not proffered the name of any potential witnesses.

[12] Likewise, the other remaining factors mentioned above are either not determinative or not pertinent to our inquiry.

claims in this forum, "[a] relator's choice of forum is entitled to relatively little weight." U.S. ex rel. Penizotto, 1996 WL 417172, at *2; accord, Ohio Art Co., 2010 WL 3155160, at *2.  Hence, since the balancing of interests strongly favors a transfer, the defendants' motion to transfer venue should be granted.

      Therefore, for reasons discussed above, it is recommended that the defendants' motion to dismiss the amended complaint (Document. No. 46) be denied.   It is further recommended that the defendants' alternate motion to transfer this case to the United States District Court for the Western District of Arkansas, Fort Smith Division (Document No. 46) be granted.

      Within fourteen (14) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

      Respectfully submitted,

      s/ ROBERT C. MITCHELL
      United States Magistrate Judge

Dated: January 28, 2011